**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x

|  |  |
|---|---|
| | : ECF CASE |
| | : |
| FRANCE TELECOM S.A., | : 12-Civ-4986 (JSR) |
| | : |
| Plaintiff, | : Time:       September 6, 2012 at 5:00 pm |
| | : |
| -v- | : Before:   Hon. Jed S. Rakoff |
| | : |
| MARVELL SEMICONDUCTOR, INC., | : Location: Courtroom 14-B |
| Defendant. | :                   Daniel Patrick Moynihan |
| | :                   United States Courthouse |
| | :                   500 Pearl Street, Room 1340 |
| | :                   New York, NY 10007-1312 |
| | : |
| | : **JURY TRIAL DEMANDED** |
| | : |
| | : |

-------------------------------------------------------- x

**MARVELL SEMICONDUCTOR, INC.'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

# TABLE OF CONTENTS

**Page**

I. STATEMENT OF FACTS ..................................................................................2

    A. France Telecom Is A French Corporation With No Meaningful Ties to New York.............................................................................................................2

    B. Marvell Is Based In The Northern District of California and Has No Meaningful Ties to New York ...............................................................................3

II. ARGUMENT .......................................................................................................4

    A. The Legal Standard ....................................................................................4

    B. This Action Should Be Transferred to the Northern District of California ............5

        1. This Action Could Have Been Brought in the Northern District of California ...............................................................................................5

        2. The Factors Weigh In Favor Of Transferring This Action ........................5

            (a) The Operative Facts Are Not Tied to New York ............................6

            (b) The Northern District of California Is More Convenient For Witnesses, and There Are No Witnesses Based In New York ...............................................................................................8

            (c) Relevant Documents Are Located In Northern California ............10

            (d) The Northern District of California Can Compel Witnesses to Testify ...............................................................................................11

            (e) Transfer to the Northern District of California Promotes Trial Efficiency and the Interest of Justice ....................................11

            (f) The Northern District of California Is More Convenient To The Parties ...............................................................................................12

        3. The Remaining Factors Are Neutral or Should Be Given Little Weight ................................................................................................12

III. CONCLUSION ...................................................................................................13

**<u>TABLE OF AUTHORITIES</u>**

<u>**Page**</u>

<u>**Cases**</u>

*Amersham Pharm. Biotech v. Perkin-Elmer Corp.*,
  11 F. Supp. 2d 729 (S.D.N.Y. 1998)..................................................4, 5, 6, 7, 8, 10, 13

*Bionx Implants, Inc. v. Biomet, Inc.*, No. 99 Civ. 740(WHP),
  1999 WL 342306 (S.D.N.Y. May 27, 1999) ...........................7, 8, 9, 10, 11, 12, 13

*Cento Group, S.P.A. v. OroAmerica, Inc.*,
  822 F. Supp. 1058 (S.D.N.Y. 1993)..............................................................................9

*Cirrex Sys. LLC v. InfraReDx, Inc.*, No. 10 Civ. 3952(DLC),
  2010 WL 3431165 (S.D.N.Y. Aug. 31, 2010)........................................6, 10, 12, 13

*Coker v. Bank of Am.*,
  984 F. Supp. 757 (S.D.N.Y. 1997)................................................................................9

*Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*,
  415 F. Supp. 2d 370 (S.D.N.Y. 2006) ......................................................................4, 5

*Herbert Ltd. P'ship v. Elec. Arts Inc.*,
  325 F. Supp. 2d 282 (S.D.N.Y. 2004)..........................................................................9

*In re Acer America Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010)........................................................................6, 8, 11

*In re Link_A_Media Device Corp.*,
  662 F.3d 1221 (Fed. Cir. 2011).................................................................................13

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009)...................................................................................7

*Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*,
  119 F. Supp. 2d 433 (S.D.N.Y. 2000)........................................................7, 8, 9, 13

*Pergo, Inc. v. Alloc, Inc.*,
  262 F. Supp. 2d 122 (S.D.N.Y. 2003)......................................................................7, 9

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)...................................................................................................13

*Ricoh Co. Ltd. v. Honeywell, Inc.*,
  817 F. Supp. 473 (D.N.J. 1993) ................................................................................11

*SercoNet, Ltd. v. Netgear, Inc.*, No. 06 Civ. 5026(JSR),
  2006 WL 2109462 (S.D.N.Y. Jul. 27, 2006) ..........................................4, 6, 7, 8, 9, 11, 12, 13

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988)....................................................................................................5

*Walker v. Jon Renau Collection, Inc.*,
   423 F. Supp. 2d 115 (S.D.N.Y. 2005)..............................................................11, 12

## <u>Statutes</u>

28 U.S.C. § 84(a) .........................................................................................................2

28 U.S.C. § 1404(a) ...............................................................................................1, 4

Fed. R. Civ. P. 45(b)(2)..............................................................................................10

Defendant Marvell Semiconductor, Inc. ("Marvell") respectfully moves pursuant to 28 U.S.C. § 1404(a) to transfer this action filed by plaintiff France Telecom S.A. ("France Telecom") to the U.S. District Court for the Northern District of California.

There is no meaningful connection with New York, let alone this District.  In contrast, there is a strong connection to the Northern District of California, where Marvell is headquartered and where likely witnesses, third parties with relevant evidence, documents and other sources of proof are located.

Here, a French plaintiff is asserting a U.S. patent on an alleged invention that was developed in France by a French named inventor, with no allegation that any part of the development took place in New York.  Thus, the locus of operative facts relating to the alleged invention is in France, not New York.

The Northern District of California is the locus of many operative facts for the accused products.  The accused products—semiconductor chips used to access certain 3G cellular networks in China and the United States—are designed by a California-based defendant, made by a third party in Asia, and included in cellular handsets sold nationwide.  There are over fifty Marvell engineers in California who have worked on the accused products.  There are additional individuals in California with relevant knowledge about the accused products.  Technical and other documents relevant to the accused Marvell products are located in, or accessible from, its headquarters in the Northern District of California.  Not surprisingly, no relevant witnesses nor sources of evidence are located in New York.  The Northern District of California has a far stronger connection and would be a more convenient forum in which to try this action.

Under these circumstances, transfer to the Northern District of California is warranted.

## I.    <u>STATEMENT OF FACTS</u>

This action involves France Telecom's allegation that certain Marvell communications processors—identified in the complaint as the "PXA9xx" family of cellular processors and the "PXA12xx" and "PX18xx" families of "slim" modems—infringe U.S. Patent No. 5,446,747 ("the '747 patent").  (D.I. 1, ¶ 13).  France Telecom asserts that Marvell supplies the accused products "for use in Blackberry wireless communications devices and systems used in" the Southern District of New York.  (D.I. 1, ¶¶ 14-15).  The complaint does not allege any other connections to New York.

### A.    France Telecom Is A French Corporation With No Meaningful Ties to New York

France Telecom is headquartered and operates principally in France.  (D.I. 1, ¶ 2).  According to France Telecom's 2010 Annual Report, the company has facilities in 220 countries and territories.  (Rycroft Decl., Ex. A at 50-51).[1]  Despite this worldwide presence, France Telecom's relevant connections in this action are to France, not any of its other facilities world wide or its U.S. subsidiaries.

The '747 patent names as the sole inventor Claude Berrou, a resident of France according to the face of the patent.  (D.I. 1-1, Patent Cover).  It appears that the alleged invention was developed in France and originally assigned to two French entities—France Telecom and third party Telediffusion de France S.A.  (D.I. 1-1, Patent Cover).

---

[1]  "Rycroft Decl __" refers to the Declaration of Krista M. Rycroft In Support of Defendant's Motion to Transfer Venue Under 28 U.S.C. § 1404(a), submitted herewith.

**B.    Marvell Is Based In The Northern District of California and Has No Meaningful Ties to New York**

Marvell is a designer of storage, communications, and consumer semiconductor products. (Santos Decl. ¶ 4).[2]  Marvell is incorporated in California and has a principal place of business and headquarters in Santa Clara, California, located in Santa Clara County in the Northern District of California.  (*Id.* ¶ 5; 28 U.S.C. § 84(a)).  Marvell employs approximately 2,880 people in the United States.  (Santos Decl. ¶ 6).  Approximately 2,200 U.S. employees—about 76 percent—work in Northern California.  (*Id.*).  Marvell has no offices, facilities or employees based in New York.  (*Id.* ¶ 8).

The accused Marvell products are semiconductor chips that control the communications and applications that run on a smartphone.  (*Id.* ¶ 9). The accused products are provided to a cellular handset manufacturer to include within a device to help access various cellular networks, such as the 3G WCDMA networks used by AT&T and T-Mobile in the United States.[3]  (*Id.*). The accused products were and are developed by a business unit that Marvell acquired in 2006 from Intel Corporation, a Delaware corporation with headquarters in the Northern District of California.  (*Id.* ¶ 10).   The accused products were designed and developed in California, Texas, Arizona, Israel, and China.  (*Id.* ¶¶ 12-13).  All promotion, sales and marketing of the accused products is managed from Marvell's headquarters in the Northern District of California.  (*Id.* ¶ 16).  No design and development of Marvell communications processors has occurred in New York.  (*Id.* ¶¶ 12, 13, 23).  In fact, Marvell has no facilities or engineers in New York.  (*Id.* ¶ 12).

---

[2]  "Santos Decl. __" refers to the Declaration of John Santos In Support of Defendant's Motion to Transfer Venue Under 28 U.S.C. § 1404(a), submitted herewith.

[3]  Not every Marvell product accused by France Telecom can be used to access U.S. 3G cellular networks.  Some of the devices can only access 3G TD-SCDMA cellular networks, which only exist in China.  (Santos Decl. ¶ 24).

No sales and marketing activity is managed from or conducted by Marvell in New York.  (Santos Decl. ¶ 16).

The accused products are manufactured by third party, Taiwan Semiconductor Manufacturing Company ("TSMC"), a Taiwanese company with U.S. facilities located in San Francisco, California and the state of Washington.  (Santos Decl. ¶¶ 18-19).  No accused product is made in New York.  (*Id.* ¶¶ 18, 23).

## II.   <u>ARGUMENT</u>

### A.   **The Legal Standard**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a); *see also Amersham Pharmacia Biotech v. Perkin-Elmer Corp.*, 11 F. Supp. 2d 729, 730-31 (S.D.N.Y. 1998) (granting motion to transfer under 28 U.S.C. § 1404(a).  The purpose of the statute is to protect the parties, witnesses and the public against unnecessary inconvenience and expense related to litigation.  *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 372 (S.D.N.Y. 2006).  *First*, the Court must determine whether the action could have been brought in the transferee court.  *Id.* at 373.  *Second*, in determining whether transfer is appropriate, the Court considers the following factors:  "(1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances."  *Amersham*, 11 F. Supp. 2d at 730; *see also SercoNet, Ltd. v. Netgear, Inc.*, No. 06 Civ. 5026(JSR), 2006 WL 2109462, at *1 (S.D.N.Y. Jul. 27, 2006).  It is within the Court's

4

discretion to determine whether the facts here warrant transfer.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'").

As this Court has previously noted, "'the convenience of the witnesses' and 'the location of relevant documents and relative ease of access to sources of proof,' loom large when deciding between fora separated by roughly 3,000 miles."  *Amersham*, 11 F. Supp. 2d at 730.  "Evaluation of the first two factors is typically dependant, moreover, on identification of the fourth factor, the 'locus of the operative facts.'"  *Id.*

**B.    This Action Should Be Transferred to the Northern District of California**

**1.    This Action Could Have Been Brought in the Northern District of California**

This action could have been brought in the Northern District of California.  Pursuant to 28 U.S.C. § 1400(b), a patent infringement action "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  Marvell is headquartered in the Northern District of California and it is subject to personal jurisdiction in the Northern District of California; venue is thus proper there.[4]  *See*, *e.g.*, *Fuji Photo Film*, 415 F. Supp. 2d at 373.

**2.    The Factors Weigh In Favor Of Transferring This Action**

The convenience of witnesses, location of relevant documents, and relative ease of access to sources of proof, when considered in connection with the locus of operative facts in this case and other factors, weigh heavily in favor of transfer.

_____

[4]  In contrast, Marvell is not subject to personal jurisdiction in this District.  (D.I. 14, Answer ¶ 5).

**(a)**     **The Operative Facts Are Not Tied to New York**

In determining whether transfer is warranted, the locus of the operative facts is an important factor to be considered by the Court.  *SercoNet*, 2006 WL 2109462, at *1.  Evaluation of other factors such as the convenience of witnesses, the location of relevant documents and ease of access to sources of proof often depends on the identification of the locus of operative facts.  *Amersham*, 11 F. Supp. 2d at 730.  In patent cases, the locus of operative facts lies either (1) where the allegedly infringing product was designed, developed, and produced or (2) where the patented invention was developed.  *See Cirrex Sys. LLC v. InfraReDx, Inc.*, No. 10 Civ. 3952(DLC), 2010 WL 3431165, at *3-*4 (S.D.N.Y. Aug. 31, 2010).  Other incidental contacts with the forum are not material to a transfer analysis.  *See SercoNet*, 2006 WL 2109462, at *1.

Here, no operative facts occurred in New York.  It appears the alleged invention was developed in France, not New York.  The sole named inventor of the '747 patent is identified as a resident of France on the face of the patent.  (D.I. 1-1, Patent Cover).  The patent was assigned to two French companies—France Telecom and Telediffusion de France S.A.  (D.I. 1, ¶¶ 2, 6 and 8; D.I. 1-1, Patent Cover).  There is no allegation that the infringing product was designed, developed, or produced in New York.

In contrast, the Northern District of California is the locus of many operative facts.  The design and development of the accused devices has been managed from Marvell's headquarters in the Northern District of California, and in Israel, China, and Arizona.  *See, e.g.*, *SercoNet*, 2006 WL 2109462, at *1 (transfer granted where development of allegedly infringing devices was managed from Santa Clara, California and Taiwan); *accord In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (transfer granted where research, design, marketing, sales and pricing occurred in California).  Likewise, the promotion, sales, and marketing of the accused processors has been managed from Marvell's headquarters in Santa Clara.  (Santos Decl. ¶ 16).

The products are manufactured in Taiwan by a third party whose U.S. offices are in the Northern District of California. (*Id.* ¶¶ 18-19).

The only alleged connection with this district is that Blackberry devices incorporating the accused products are used in New York. (D.I. 1, ¶¶ 14-15). That allegation is immaterial to the transfer analysis. The accused products are not tailored for special use in New York. (Santos Decl. ¶ 17). Rather, Blackberry devices incorporating the accused products are sold and used nationwide. (*Id.*). Sales of the accused products within a district as part of a nationwide sales program does not establish a material connection to that jurisdiction. *See*, *e.g.*, *SercoNet*, 2006 WL 2109462, at *1 (noting incidental sale of some products in New York as not material to transfer analysis); *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 129-30 (S.D.N.Y. 2003) ("In addition, given that the nexus of the allegedly infringing activity is outside New York, the sales of defendants' products in New York, is insufficient to find that the operative facts in this litigation are connected to New York."); *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 439-40 (S.D.N.Y. 2000) (locus of operative facts was Pennsylvania where minimal sales of accused products was the only connection to New York); *Bionx Implants, Inc. v. Biomet, Inc.*, No. 99 Civ. 740(WHP), 1999 WL 342306, at *4 (S.D.N.Y. May 27, 1999) (holding that "where defendants' products are sold in many states, sales alone are insufficient to establish a material connection to the forum"); *Amersham*, 11 F Supp. 2d at 730 (finding California was locus of operative events because product line was managed from that district, witnesses and document were located there, and there was "no special concentration of sales in New York"); *accord In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("If the products were sold throughout the United States … the citizens of the venue chosen by the plaintiff 'have no more or less of a meaningful connection to the case than any other venue.'").

Further, unlike the defendants in *SercoNet*, *Pergo*, *Invivo*, *Bionx*, and *Amersham*, Marvell itself does not sell or ship any of the accused products into New York.  (Santos Decl. ¶ 17).  Thus, any connection to New York is even more tenuous and should be given no weight.

This factor strongly weighs in favor of transfer.

        **(b)**      **The Northern District of California Is More Convenient For Witnesses, and There Are No Witnesses Based In New York**

Transfer to California will be more convenient for both party and non-party witnesses here.  Many of Marvell's party witnesses are employed in its Santa Clara, California headquarters.  Consequently, "[v]enue in their home district is without a question more convenient for these party witnesses."  *Invivo Research*, 119 F. Supp. 2d at 437.

There are over 50 engineers in Santa Clara, California who have worked on the development of accused products.  (Santos Decl. ¶ 14).  Specifically, Marvell has identified 13 individuals with knowledge of the technical, sales and marketing details for the accused devices in Santa Clara.  (Santos Decl. ¶¶ 15-16).  The following California-based individuals have knowledge regarding the design, structure, and operation of the accused products:  Steven Jiang, Nitin Gupta, Hunglin Hsu, Alex Zhang, Xikai Zhao, Derek Chang, and Edward Peng.  (Santos Decl. ¶ 15).  And the following California-based individuals have knowledge with respect to sales and marketing of the accused products:  Lu Chang, William Kovacevic, Allen Leibovitch, David Matukaitis, Steven Quan and John Santos.  (Santos Decl. ¶ 16).  There are no individuals with relevant knowledge located in New York.  *See Amersham*, 11 F. Supp. 2d at 730; *SercoNet*, 2006 WL 2109462, at *1; *accord In re Acer*, 626 F.3d at 1255 (transfer where party witnesses "reside in or close to the Northern District of California.").

Further, to the extent third party witnesses from TSMC may be relevant, knowledgeable individuals would likely be located in the Northern District of California, where TSMC's U.S.

headquarters is located, or in Taiwan. (Santos Decl. ¶ 19). Because it has no facilities in New York, TSMC likely has no knowledgeable employees located in New York.

France Telecom will no doubt argue that New York is more convenient for its witnesses because New York is geographically closer to France. This Court, however, has rejected such arguments and held that the location of overseas witnesses should not be considered in deciding whether to transfer venue. *See, e.g.*, *Pergo*, 262 F. Supp. 2d at 130 (rejecting argument that New York was more convenient than Wisconsin or Georgia for witnesses traveling from Europe); *Bionx*, 1999 WL 342306, at *3 (rejecting argument that New York was more convenient than Indiana for Finnish witnesses); *Coker v. Bank of America*, 984 F. Supp. 757, 765-66 (S.D.N.Y. 1997) (rejecting argument that New York was more convenient than New Mexico because of direct flights between Nigeria and New York); *Cento Group, S.P.A. v. OroAmerica, Inc*., 822 F. Supp. 1058, 1061-62 (S.D.N.Y. 1993) (rejecting argument that New York was more convenient than California for Italian witnesses); *accord SercoNet*, 2006 WL 2109462, at *2 n.1 (finding "that the trip from Israel to California may be somewhat longer or more expensive is of limited materiality").

Moreover, French witnesses would be required to travel from France to either venue with no relative impact on their convenience. *Invivo Research*, 119 F. Supp. 2d at 437; *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 288 (S.D.N.Y. 2004) (convenience of witnesses "who reside in neither the current nor the transferee forum is irrelevant" because they will have to travel regardless of the venue).

This factor weighs heavily in favor of transfer.

### (c)       Relevant Documents Are Located In Northern California

The location of relevant documents is important especially where, as here, the current forum and the transferee forum are a significant distance apart. *See Amersham*, 11 F. Supp. 2d at 730. This Court has recognized that in patent infringement cases, the majority of relevant documents are produced from the alleged infringer; thus, Marvell's location is the key consideration. *Cirrex Sys.*, 2010 WL 3431165, at *2.

Relevant documents here include technical, sales and marketing documents for the accused products. These documents are located in Santa Clara, California, Israel, China, Texas, and Arizona. (Santos Decl. ¶¶ 20-21). Manufacturing documents, to the extent relevant, are located either in Santa Clara or with TSMC. (Santos Decl. ¶¶ 19-21). Furthermore, technical and other relevant documents located in servers in Israel and other Marvell facilities outside California are accessible through the computer network in Santa Clara. (Santos Decl. ¶ 20).

On the other hand, no relevant documents regarding the accused devices are located in New York. (Santos Decl. ¶ 21). Marvell does not have servers in New York, none of its electronic data is hosted in New York, and Marvell maintains no document storage facilities in New York. (Santos Decl. ¶¶ 20-21). Further, documents relating to the development and ownership of the alleged invention are likely located in France and Indiana (where the prosecuting attorneys reside), not in New York.[5]

Thus, this factor weighs heavily in favor of transfer.

---

[5] To the extent that France Telecom's documents may be maintained with litigation counsel in New York, that fact is irrelevant. *Cirrex Sys.*, 2010 WL 3431165, at *2; *Bionx*, 1999 WL 342306, at *4.

**(d)     The Northern District of California Can Compel Witnesses to Testify**

The Court should also consider the availability of process to require the presence of unwilling witnesses at trial in the transferee forum. *SercoNet*, 2006 WL 2109462, at *2; *accord In re Acer*, 626 F.3d at 1255. At a minimum, TSMC (which manufactures the accused devices) and Intel (from whom Marvell acquired the accused product line) may be potential non-party witnesses that are outside the subpoena power of the Southern District of New York. *See* Fed. R. Civ. P. 45(b)(2). Both are located in the Northern District of California, and outside the power of the Southern District of New York. TSMC—the third party semiconductor foundry that makes the accused processors for Marvell—has facilities in San Francisco. Intel, the original developer of the accused feature and product line, has its principal place of business in Santa Clara, California. These companies could be subpoenaed for trial in the Northern District of California, but not in this Court. In contrast, there are no relevant third parties in New York over which this Court would have subpoena power and the Northern District of California would not. Thus, this factor also favors transfer.

**(e)     Transfer to the Northern District of California Promotes Trial Efficiency and the Interest of Justice**

The ninth factor—efficiency and the interest of justice—also favors transfer. *First*, this action just commenced; little judicial effort will go to waste by transferring it to a different forum that is well-equipped to manage patent litigation. *Walker v. Jon Renau Collection, Inc.*, 423 F. Supp. 2d 115, 119 (S.D.N.Y. 2005); *Bionx*, 1999 WL 342306, at *5. Any discovery that is conducted or served under the ambit of this district is useable in the Northern District of California. *Second*, because Marvell is a California corporation, has its principal place of business in California, and the operative facts regarding the alleged infringement are tied to

11

California, California has a strong public interest in overseeing this dispute. *Bionx*, 1999 WL 342306, at *5 (citing *Ricoh Co. Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 486 (D.N.J. 1993)).

       **(f)**       **The Northern District of California Is More Convenient To The Parties**

The "convenience of the parties" factor also favors transfer to the Northern District of California.  Because Marvell is headquartered in that District and documents, witnesses and other evidence are located there and not in New York, the Northern District of California plainly will be a more convenient forum for Marvell.  The fact that documents and witnesses also exist elsewhere outside of New York is not material to the convenience of parties.

France Telecom, on the other hand, is a foreign corporation.  Transfer to the Northern District of California "will be, at worst, only marginally less convenient." *SercoNet*, 2006 WL 2109462, at *2; *Walker*, 423 F. Supp. 2d at 118.  This factor weighs in favor of transfer.

       **3.**       **The Remaining Factors Are Neutral or Should Be Given Little Weight**

The sixth factor—the relative means of the parties—is neutral here because "[t]he relative means of the parties is not generally a factor in suits involving corporations." *Cirrex Sys.*, 2010 WL 3431165, at *4.

The seventh factor—familiarity with the governing law—is neutral here because both courts are capable of handling a patent dispute grounded in federal law. *Cirrex Sys.*, 2010 WL 3431165, at *4; *SercoNet*, 2006 WL 2109462, at *2.  Both the Northern District of California and this Court are part of the Patent Pilot Program.

Finally, the eighth factor—the plaintiff's choice of forum—should be given little to no weight because France Telecom's choice has no basis in any meaningful connection to this

forum.[6]  *See Amersham*, 11 F. Supp. 2d at 730 (noting plaintiff's selection had an "artificial quality").  France Telecom is a foreign corporation that is not based in New York and does not have any activities in New York that have any connection to the operative facts.  *SercoNet*, 2006 WL 2109462, at *2 (less weight accorded to factor where Israeli plaintiff was not also based in New York); *accord In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) (less deference if not home forum); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981) (holding that "a foreign plaintiff's choice deserves less deference").  Furthermore, France Telecom's assertion that Marvell supplies the accused products "for use in Blackberry wireless devices and systems used in this district" (D.I. 1, ¶¶ 14-15) is immaterial given that Blackberry devices are sold nationwide.  *See, e.g.*, *Invivo Research*, 119 F. Supp. 2d at 438-39; *Amersham*, 11 F. Supp. 2d at 730; *Bionx*, 1999 WL 342306, at *4.

        As this Court has noted in the past, the choice of forum of a foreign plaintiff takes on an "artificial quality" where there is a tenuous connection between the forum and the action.  *See Amersham*, 11 F. Supp. 2d at 730.  Here, Marvell does not ship any of the accused products into New York.  And to the extent a device containing a Marvell accused processor is used in New York, such devices are sold throughout the United States and are not unique to New York.  As discussed above, the operative facts, witnesses, and sources of evidence are all outside New York.  Plaintiff's choice should be given no weight.

## III.    CONCLUSION

        Because each of the factors either favors transfer or is neutral, transfer to the Northern District of California is clearly warranted.  For all the foregoing reasons, Marvell respectfully

---

        [6]  Even if this factor weighed in favor of transfer, it would be insufficient to outweigh the other factors when taken as a whole.  *Cirrex*, 2010 WL 3431165, at *5; *SercoNet*, 2006 WL 2109462, at *2.

requests that the Court grant Marvell's motion to transfer venue to the Northern District of

California.

Dated: July 30, 2012

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By:   *s/ Raymond Nimrod*
      Edward J. DeFranco (ED6524)
      Raymond Nimrod (*pro hac vice*)
      Eric Huang (EH9072)
      Krista M. Rycroft (KR9343)
      51 Madison Avenue, 22nd Floor
      New York, New York 10010
      Tel.: 212-849-7000
      Fax: 212-849-7100
      eddefranco@quinnemanuel.com
      raynimrod@quinnemanuel.com
      erichuang@quinnemanuel.com
      kristarycroft@quinnemanuel.com

      Attorneys for Defendant
      *Marvell Semiconductor, Inc.*

OF COUNSEL

      Kevin P.B. Johnson (KJ8689)
      QUINN EMANUEL URQUHART &
      SULLIVAN, LLP
      555 Twin Dolphin Drive, 5th Floor
      Redwood Shores, CA 94065
      Tel.: 650-801-5000
      Fax: 650-801-5100
      kevinjohnson@quinnemanuel.com

14